**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Billy W. Martin, | ) | No. CV 11-00459-PHX-NVW |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| Michael J. Astrue, Commissioner of Social Security, | ) | |
| Defendant. | ) | |

Billy W. Martin seeks review under 42 U.S.C. §§ 405(g), 1383(c)(3), of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied him disability insurance benefits and supplemental security income under the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.  Background**

**A.  Factual Background**

Martin was born on March 20, 1971. He was 29 years old on July 1, 2000, the alleged disability onset date, and 38 years old on the date of the ALJ's decision. He has a high school education (G.E.D.) and is able to communicate in English. He does not have

a history of past relevant work. Martin has been diagnosed with major depressive disorder and bipolar disorder.

Martin testified that he had difficulty associating with people when he was young because his father moved at least once a year, sometimes two or three times a year. When he was 18 or 19 years old, he quit living with his father and lived independently for awhile. When he was 20 years old, he developed mental problems, quit socializing, and moved in with his mother. He has lived with his mother ever since. He no longer has a drivers license, so she drives him to go grocery shopping and to medical appointments. His mother reminds him to take his medications. He receives medical care through the Arizona Health Care Cost Containment System.

Martin reports that he spends most days in his room, watching television with the two family dogs. He goes outside to smoke every two or three hours. If he needs to go somewhere, he will take a shower, but otherwise bathing seems like too much trouble. He has difficulty sleeping without medication, but when he takes sleep medication, he usually sleeps almost 12 hours.

Martin does his own grocery shopping because he has food stamps. In 2009, he testified that he does not help his mother with any of the cooking, housework, or yard work. In 2008, both Martin and his mother reported that about three times a week he would make sandwiches or simple meals and would take out the trash about once a week.

Martin testified that he does not currently drink alcohol or use drugs. He said that when he was in his mid-twenties he drank excessively and used methamphetamine.

When asked why he has not worked much in the past 20 years, Martin said he was doing construction work and his knee buckled a couple of times, so he became afraid of heights and could no longer do construction work. He also said he forgets things constantly and would "mess up" on the job because of forgetfulness. He also reported panic attacks and depression.

**B. Procedural History**

On July 5, 2007, Martin applied for disability insurance benefits and supplemental security income, alleging disability beginning July 1, 2000. The application was denied on initial review and again on reconsideration, after which Martin requested that his claim be heard by an ALJ. On August 13, 2009, an administrative hearing was held at which Martin testified and was represented by counsel. George J. Bluth, an impartial vocational expert, also appeared at the hearing. On November 6, 2009, the ALJ issued her decision that Martin was not disabled within the meaning of the Social Security Act.

On January 8, 2011, the Appeals Council denied Martin's request for review of the ALJ's unfavorable decision, making that decision the final decision of the Commissioner. On March 9, 2011, Martin sought judicial review of the decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

**II. Standard of Review**

The district court reviews only those issues raised by the party challenging the ALJ's decision.[1] *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.*

---

[1] The Court does not review issues raised only in a reply brief. Here, Martin raises for the first time in his reply brief contentions that the residual functional capacity assessment is deficient because it does not say how long it would take Martin to learn how to perform his job or whether Martin has any limitation in his ability to deal with coworkers and supervisors.

As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In reviewing the ALJ's reasoning, the court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

### III. Five-Step Sequential Evaluation Process

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). If the ALJ determines that the claimant is disabled or not disabled at any step, the ALJ does not continue to the next step. The claimant bears the burden of proof on the first four steps, but at step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(I). If so, the claimant is not disabled and the inquiry ends. *Id.* At the step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id*. At step three, the ALJ considers whether the claimant's impairment or combination of impairments meet or equal an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id*. If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he

determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id*. If not, the claimant is disabled. *Id*.

**IV.  Analysis**

At step one, the ALJ found that Martin has not engaged in substantial gainful activity since July 1, 2000, the alleged onset date of disability. The ALJ also found that Martin had acquired sufficient quarters of coverage to remain insured through June 20, 2007, but Martin believes the date last insured is June 30, 2001. At step two, the ALJ found that Martin had the following severe impairment: bipolar disorder. At step three, the ALJ found that Martin did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Martin does not raise any issues related to the ALJ's determinations at the first three steps of the five-step sequential evaluation process.

The ALJ determined that Martin:

> has the residual functional capacity to perform a range of work at all exertional levels but with the following nonexertional limitations: he can perform simple, unskilled work with minimal contact with the general public, and he is able to work independently once he learns how to perform his job.

At step four, the ALJ determined that Martin does not have any past relevant work and therefore is unable to perform past relevant work. At step five, the ALJ concluded that, considering Martin's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Martin could perform.

**A.    Weighing Medical Source Evidence**

**1.    Legal Standard**

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and

- 5 -

1  (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v.
2  Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight should be given to the
3  opinion of a treating physician than to the opinions of non-treating physicians. *Id.* A
4  treating physician's opinion is afforded great weight because such physicians are
5  "employed to cure and [have] a greater opportunity to observe and know the patient as an
6  individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). Where a treating
7  physician's opinion is not contradicted by another physician, it may be rejected only for
8  "clear and convincing" reasons, and where it is contradicted, it may not be rejected
9  without "specific and legitimate reasons" supported by substantial evidence in the record.
10 *Lester,* 81 F.3d at 830. Moreover, the Commissioner must give weight to the treating
11 physician's subjective judgments in addition to his clinical findings and interpretation of
12 test results. *Id.* at 832-33.

13 Further, an examining physician's opinion generally must be given greater weight
14 than that of a non-examining physician. *Id.* at 830. As with a treating physician, there
15 must be clear and convincing reasons for rejecting the uncontradicted opinion of an
16 examining physician, and specific and legitimate reasons, supported by substantial
17 evidence in the record, for rejecting an examining physician's contradicted opinion. *Id.* at
18 830-31.

19 The opinion of a non-examining physician is not itself substantial evidence that
20 justifies the rejection of the opinion of either a treating physician or an examining
21 physician. *Id.* at 831. "The opinions of non-treating or non-examining physicians may
22 also serve as substantial evidence when the opinions are consistent with independent
23 clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957. Factors that
24 an ALJ may consider when evaluating any medical opinion include "the amount of
25 relevant evidence that supports the opinion and the quality of the explanation provided;
26 the consistency of the medical opinion with the record as a whole; [and] the specialty of
27 the physician providing the opinion." *Orn*, 495 F.3d at 631.

Moreover, Social Security Rules expressly require a treating source's opinion on an issue of a claimant's impairment be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). If a treating source's opinion is not given controlling weight, the weight that it will be given is determined by length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, relevant evidence supporting the opinion, consistency with the record as a whole, the source's specialization, and other factors. *Id.*

Finding that a treating physician's opinion is not entitled to controlling weight does not mean that the opinion should be rejected:

> [A] finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §404.1527. . . . In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*Orn*, 495 F.3d at 631-32 (quoting Social Security Ruling 96-2p). Where there is a conflict between the opinion of a treating physician and an examining physician, the ALJ may not reject the opinion of the treating physician without setting forth specific, legitimate reasons supported by substantial evidence in the record. *Id.* at 632.

### 2. The ALJ Did Not Err in Weighing Medical Source Opinion Evidence.

Martin contends the ALJ erred by giving greater weight to the opinion of the non-examining physician Randall Garland, Ph.D., than to the opinions of treating psychiatrist Leela Reddy, M.D., treating nurse practitioner Judy Yurgel, and examining state agency consultative physician Joanne Smart, Ph.D. The ALJ gave "substantial weight" to the opinion of Dr. Garland, the state agency psychologist, who completed both a mental residual functional capacity and the psychiatric review technique form. The ALJ agreed

- 7 -

that the evidence supported Dr. Garland's mental residual functional capacity assessment, but only gave "some consideration" to Dr. Garland's conclusions with respect to the psychiatric review technique form. The ALJ assigned "little weight" to the opinions of Dr. Reddy, NP Yurgel, and Dr. Smart.

Dr. Reddy's July 2002 psychiatric evaluation states that Martin first sought treatment in 2001, at which time his primary care physician prescribed Wellbutrin. After three weeks, Martin discontinued taking Wellbutrin because he did not see any benefits. His primary care physician then prescribed Paxil, which Martin discontinued after three weeks because he felt too tired. He reported being unable to work because of a knee problem as a result of a high school football injury. Dr. Reddy observed that his "thought processes were logical and goal directed without any evidence of looseness of association or flight of ideas," but his "cognition and concentration was significantly impaired." She assessed his intellectual functioning as average, his abstract ability as intact, and his insight and judgment as fair. Dr. Reddy prescribed Zoloft and said "we will monitor cautiously for compliance." In March 2003, Martin was discharged from Dr. Reddy's care for failing to follow through with treatment, keep appointments, and respond to appropriate notice.

In September 2008 and July 2009, NP Yurgel completed medical assessments of Martin's ability to perform work-related activities. In both assessments she evaluated Martin's degree of restriction of daily activities as severe; his limitation in understanding, carrying out, and remembering instructions as moderately severe; and his limitation in performing simple, repetitive, or varied tasks as moderately severe. In 2008 NP Yurgel wrote that a psychological evaluation had not been obtained at her agency because the diagnosis of a schizoaffective disorder was clear, he had been ill for at least 15 years, and the same level of severity had existed for five years. In 2009 she wrote that a psychiatric evaluation had been done several years before and that the restrictions she assessed were in existence since 1999.

In June 2008, state agency consultative physician Dr. Smart assessed Martin based on a clinical interview, Mini Mental Status Exam results, and a review of records. She noted, "He reported that he is doing better since he has been on medications," was able to get his hair cut, and was bathing weekly now. She also noted, "His mother said he is showing some emotion now, which he attributed to the medication he is taking." He reported to Dr. Smart that his worst problem was his difficulty being around people. Dr. Smart said this "suggests the possibility, given his other symptoms, of Schizoid Personality Disorder." She concluded Martin "is severely depressed, but his depression appears to be lifting somewhat." Dr. Smart assessed Martin as likely to have a slight impairment in work situations because of his long-term memory problems, no significant short-term memory problems, and little problem with understanding. She assessed him as likely to have moderate impairment maintaining concentration and focus and completing tasks or normal workday schedules. She further opined that he is likely to have moderate impairment in social interaction, which sometimes may be marked, and he is likely to have moderate to marked difficulty adapting to changes needed to maintain employment.

In July 2008, Dr. Garland reviewed Martin's medical record as of the alleged onset date of disability, July 1, 2000, but noted that there was insufficient evidence regarding July 1, 2000, to June 30, 2001. Dr. Garland made specific comments regarding the treatment notes and evaluations by other medical sources. Dr. Garland assessed Martin's functional limitations as moderate in restriction of daily living activities, difficulties maintaining social functioning, and difficulties in maintaining concentration, persistence, or pace. He concluded that Martin:

> is able to meet the basic mental demands of competitive, remunerative, unskilled work on a sustained basis, particularly in settings of low social contact, including the abilities to:
>
> 1. Understand, carry out, and remember simple instructions.
>
> 2. Make judgments commensurate with the functions of unskilled work, i.e., simple work-related decisions.

3.     Respond appropriately to supervision, coworkers and work
                    situations.

             4.     Deal with changes in a routine work setting.

    In order to reject a treating physician's contradicted opinion, the ALJ is required to provide specific and legitimate reasons supported by substantial evidence in the record. *Lester,* 81 F.3d at 830. Here, the ALJ did not give controlling weight to any provider's opinion or entirely reject any provider's opinion. But, to the extent that the ALJ accepted Dr. Garland's opinion over that of another provider, she stated that the evidence supported Dr. Garland's opinions that Martin "has the ability to meet the basic mental demands of competitive, remunerative, unskilled work on a sustained basis, particularly in settings of low social contact" and is "able to understand, carry out, and remember simple instructions, to make judgments commensurate with the functions of unskilled work (i.e. simple work-related decisions), to respond appropriately to supervision, coworkers, and work situations, and to deal with changes in a routine work setting." The ALJ further specifically found that the evidence supported Dr. Garland's opinion that Martin has "moderate limitations in social functioning and concentration, persistence, and pace, but there is no evidence that the claimant has moderate limitations in activities of daily living."

    The ALJ stated that she gave little weight to the opinions of Dr. Reddy, NP Yurgel, and Dr. Smart because the assessments were extreme considering the overall record and because NP Yurgel's evaluation was "not only inconsistent with her treating records but the overall evidence, including the fact that the claimant's symptoms are markedly improved when he complies with treatment." Thus, the ALJ provided specific and legitimate reasons supported by substantial evidence in the record and did not err in weighing medical source opinion evidence.

- 10 -

## B. Subjective Symptom Testimony

### 1. Legal Standard

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis: (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *See Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). To support a lack of credibility finding, the ALJ is required to point to specific facts in the record that demonstrate that Martin's symptoms are less severe than he claims. *Id.* at 592. "Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (internal quotation marks and citations omitted); *see also Warre ex rel. E.T. IV v. Barnhart*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").

To be found credible regarding subjective pain or fatigue, a claimant is not required to: (1) produce objective medical evidence of the pain or fatigue itself, or the severity thereof; (2) produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom; or (3) show that his impairment could reasonably be expected to cause the severity of the alleged symptom, only that it could reasonably have caused some degree of the symptom. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

- 11 -

### 2. The ALJ Did Not Err by Finding Martin's Subjective Symptom Testimony Not Fully Credible.

Martin contends that the ALJ erred by failing to set forth specific, clear, and convincing reasons to reject his testimony about the severity of his subjective symptoms. However, the administrative hearing decision states:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credited to the extent they are inconsistent with the above residual functional capacity assessment.
>
> The overall evidence does not support the severity of his symptoms and work-related limitations. First, the claimant has neither consistently sought treatment for his impairments nor complied with his plan of care. . . .
>
> In response to his record of noncompliance, the claimant testified that he relied on his mother to remind him about his medication and that he had been waiting to receive a new appointment date. This merely indicates that he abdicates responsibility for following through with his treatment. Moreover, his symptoms are evidently not as severe as alleged because he has had periods of no treatment from January 2000 to July 2002, November 2003 to June 2005, and January 2006 to October 2007.
>
> Second, when the claimant did receive treatment, the record shows that his symptoms improved. . . .
>
> Third, the claimant's ability to work is further illustrated by his own testimony. At the hearing, he did not indicate any specific work-related limitations. Although he alleged the inability to associate with other people and issues of anger management, he is able to go shopping and rely on his mother for help. The record shows that, when compliant, he has been able to control his symptoms with treatment, and he does not suffer from significant adverse side effects from the medication.

The reasons stated for finding Martin's testimony about the severity of his symptoms are sufficiently specific, clear, and convincing.

### C. Third-Party Reports

Martin contends the ALJ erred by rejecting lay witness testimony without providing specific reasons relevant to each witness and supported by substantial evidence. The ALJ's hearing decision does not explicitly mention the third-party function report completed by Martin's mother dated May 27, 2008, and did not implicitly reject it. The

- 12 -

report is not only consistent with, but almost duplicates, Martin's May 27, 2008 self report. In fact, the record shows that, at times, Martin's mother completed documents for Martin and participated in his interviews with examining sources. Her "third-party" report does not add any new information to be given or denied weight.

IT IS THEREFORE ORDERED affirming the final decision of the Commissioner of Social Security denying Billy W. Martin disability benefits.

IT IS FURTHER ORDERED that the Clerk enter judgment in favor of Defendant against Plaintiff and that Plaintiff take nothing. The Clerk shall terminate this action.

DATED this 17th day of February, 2012.

_____
Neil V. Wake
United States District Judge